UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER COOK,

                Plaintiff,

        v.

EAGLEPICHER TECHNOLOGIES, LLC,
and DOES 1–10,

                Defendant.

No. 22-cv-1893 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

      After founding a successful startup that developed lithium-ion energy solutions, Plaintiff Christopher Cook sold his business to Defendant EaglePicher Technologies, LLC ("EPT"), codifying the terms of the acquisition in a Purchase Agreement. Because he remained active in the operation of his former startup after the sale, Plaintiff also entered into an Employment Agreement with EPT. After resigning from EPT approximately one year later, Plaintiff brought this action against the company and Does 1–10, alleging he is owed a payout sum under the terms of those Agreements, and that Defendants are in breach for failure to pay. Now before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, given the plain language of the contracts negotiated by the parties, the motion is granted, albeit without prejudice.

## BACKGROUND

      The following facts are taken from the Complaint, and the Court construes them to be true for the purposes of the present motion. *See Lundy v. Cath. Health Sys. Of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). The Court also considers the Purchase Agreement, *see* Cohen Decl.,

Ex. 1, and Employment Agreement, *see id*., Ex. 2, given that they are "incorporated by reference in the [C]omplaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

Plaintiff founded LithiumStart, a company specialized in designing and building lithium-ion energy solutions for private and public entities, in 2011. Compl. ¶ 9. LithiumStart experienced rapid and sustained success in the years that followed, posting a revenue of $3.4 million by 2016. *Id*. ¶ 10. Given the rising demand for lithium-ion energy storage solutions, the company was expected to experience exponential growth in the years to follow. *Id*. ¶ 10. Defendant EPT sought to acquire LithiumStart in 2017, *id*. ¶ 11, and negotiated an arrangement such that LithiumStart would be able to preserve a degree of autonomy, would remain authorized to make its own investments and operating decisions, and would be provided with resources to stimulate growth, *id*. ¶ 14. The terms of the acquisition were ultimately codified in a Purchase Agreement executed by the parties in February 2017, and were additionally recorded in a separate Employment Agreement covering the terms of Plaintiff's post-acquisition employment with EPT. *Id*. ¶ 11.

The Purchase Agreement contained performance milestones entitling Plaintiff to additional earn-out payments provided certain conditions were met. *Id*. ¶ 12. Plaintiff alleges that, although he repeatedly completed these milestones, EPT regularly delayed the required payouts for months at a time. *Id*. The Complaint further alleges that EPT's post-merger integration of LithiumStart was continuously delayed, such that, even a year after acquisition, it was only partially integrated into EPT. *Id*. ¶19. EPT also allegedly refused to formalize revenue counting methods, or to provide a current accounting for LithiumStart's progress on defined milestones. *Id*. ¶ 20.

On January 26, 2018, Plaintiff emailed Gordon Walker, EPT's CEO, providing notice that he believed there had been a material reduction in his duties, level of authority, and/or responsibility, and thus a "Good Reason" for his departure had been created under the terms of the

Purchase Agreement entitling him to a 2018 Accelerated Payment if the issues were not cured within the period specified by the contract. *Id*. ¶ 22.  Specifically, Plaintiff raised concerns with the removal of subordinates from his reporting structure, with EPT's refusal to allow LithumStart to purchase raw materials and supplies for key customers, with EPT's implementation of hiring freezes and slowdowns, and with EPT's unannounced reorganizations.  *Id*.  Plaintiff argued to Walker that these failings led to a significant backlog in business development and tasks, and eventually evolved into decreased revenue and lost customers.  *Id*.  As would later become apparent, Plaintiff alleges, Apollo Global Management LLC, EPT's then-owner, had been preparing to sell EPT at the time of each of these organizational failings.  *Id*. ¶ 15.

A chain of events in March 2018 precipitated the present dispute between the parties.  First, on March 6, 2018, Plaintiff informed Walker of his intent to resign—critically, effective April 6, 2018—given what he characterized as EPT's failure to cure the conditions set forth in his prior email in January.  *Id*. ¶ 24.  Two days later, on March 8, another entity, GTCR LLC, acquired EPT.  *Id*. ¶ 25.  Four days after that, on March 12, EPT's Legal Director wrote an email indicating that new, limited Delegations of Authority pursuant to GTCR's acquisition of EPT would also apply to LithiumStart and Plaintiff.  *Id*. ¶ 27.[1]  On March 14, Plaintiff gave notice that he was entitled to an acceleration of his earn-out payments.  *Id*. ¶ 30.  And, on March 16, EPT accepted Plaintiff's resignation, effective April 6, 2018, although disputing that his resignation was with "Good Reason."  *Id*. ¶ 24; Cohen Decl., Ex.5.  EPT further indicated that Plaintiff "no longer was required to come into the office, but had to remain ready to do so upon request."  *Id*. ¶ 24.

Accordingly, Plaintiff's employment with EPT ended April 6, 2018; he was not paid the

---

[1] Defendant insists that subsequent correspondence in this email chain is within the proper scope of materials which may be considered by the Court for purposes of the present motion.  *See* Mot. at 18–19.  The Court need not resolve that issue, however, as any subsequent email correspondence is immaterial to the Court's determination granting the motion to dismiss.

accelerated earn outs to which he claims he was entitled. *Id*. ¶¶ 24, 31.

### *Conditions for the 2018 Acceleration Payment*

As relevant to this action, under Section 1.05(d)(i) of the Purchase Agreement, EPT would owe Plaintiff a 2018 Acceleration Payment if one of two sets of conditions were satisfied prior to the end of 2018: "(A) there is (i) an EPT Liquidity Event and (ii) a Diminution, or (B) a Termination Without Cause." Purchase Agmt. § 1.05(d)(i). Given Plaintiff's voluntary resignation, there is no allegation that he was terminated without cause; accordingly, in order to be entitled to the relief he seeks, Plaintiff must demonstrate that he was owed an accelerated payout under condition (A)—that is, that there was both an "EPT Liquidity Event" and a "Diminution."

Critically, however, Section 1.05(c) provides that Plaintiff must also satisfy an express "condition precedent to . . . receiving any payment pursuant to . . . Section 1.05." *Id*. § 1.05(c). Namely, he "shall not be a Bad Leaver." *Id*. If Plaintiff is a "Bad Leaver"—regardless of any other condition being satisfied—he "shall forfeit his right to . . . and shall not be entitled to receive any" earn-out payment. *Id*.

In sum: for entitlement to an accelerated payment, Plaintiff must: (1) not be a "Bad Leaver," *id*. § 1.05(c); (2) demonstrate that there was an "EPT Liquidity Event, *id*. § 1.05(d)(i)(A)(i); and (3) demonstrate there was a "Diminution," *id*. § 1.05(d)(i)(A)(ii).

### *Definitions Under the Purchase Agreement*

The Purchase Agreement defines a "Bad Leaver" as an employee who either (1) was terminated for cause, or (2) "voluntarily resigned . . . except . . . where such resignation is due to Good Reason or is mutually agreed to by [the employee] and EPT." *Id*. at 39. In turn, "[i]n order for an employee to resign with Good Reason," there must have been a "Reduction," defined as a "change" that "materially reduces" the employee's "duties, level of authority or responsibility,"

4

*id*. at 44–45, and the employee's resignation must be "effective no later than 30 days after the expiration of [EPT's] 30-day cure period." *Id*. at 44–45.

An "EPT Liquidity Event" occurs when there is a sale of "all or substantially all of the assets" of EPT's holding company, OMG Holdings, Inc., or when EPT's owner, Apollo Global Management, no longer holds, directly or indirectly, at least "50.01%" of the equity in OMG Holdings. *Id*. at 42–43.

Finally, a "Diminution" is a "material diminution in the duties and responsibilities of [an employee] as compared with [their] duties and responsibilities as of immediately prior to an EPT Liquidity Event." *Id*. at 42. A "Diminution" is akin to a "Reduction" under the Purchase agreement, as both terms speak to a decrease or lessening of an employee's responsibilities. The key difference, however, is that a Diminution concerns such diminished responsibility as compared with an employee's duties "*immediately prior*" to an EPT Liquidity Event. *Id*. at 42.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cnty. of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 149 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To state a claim with requisite "facial plausibility," a plaintiff must allege enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 678. Facts merely "consistent with" liability or raising "conceivable" claims do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). In considering a motion to dismiss, courts must construe a complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). The Court need not, however, credit

5

"threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.     Plaintiff Fails to Adequately Plead that he Satisfies the Condition Precedent

Under New York law, "[c]onditions precedent must be literally observed when a contract's language unmistakably expresses them." *Karmilowicz v. Hartford Fin. Servs. Grp.*, 2011 WL 2936013, at *10 (S.D.N.Y. July 14, 2011), *aff'd*, 494 F. App'x 153 (2d Cir. 2012); *see also Baraliu v. Vinya Cap., L.P.*, 2009 WL 959578, at *5 (S.D.N.Y. Mar. 31, 2009) ("Where the language of a contract makes it unmistakably clear that a condition precedent was intended, literal observance is required.") (cleaned up). Here, to be owed the 2018 Acceleration Payment, Plaintiff must satisfy the condition precedent—that is, he must plausibly allege that he was not a "Bad Leaver." The Purchase Agreement provides:

> Notwithstanding anything herein or otherwise to the contrary, as a condition precedent to any Person receiving any payment pursuant to this Section 1.05 (whether an earn-out payment, bonus payment, or otherwise), if, as and when due in accordance with this Section 1.05 (as applicable, an "Earn-Out Payment", and such Person, a "Earn-Out Recipient"), such Earn-Out Recipient shall not be a Bad Leaver. In the event that any Earn-Out Recipient is a Bad Leaver, then such Earn-Out Recipient shall forfeit his right to, and thereafter shall not be entitled or eligible to receive, any amount that has not been paid or earned, in respect of any Earn-Out Payment, to such Earn-Out Recipient as of the date such Earn-Out Recipient becomes a Bad Leaver.

Purchase Agmt. § 1.05(c). As explained by the definitions section above, Plaintiff qualifies as a "Bad Leaver if he was either (1) terminated for cause, or (2) voluntarily resigned except to the degree "such resignation is due to Good Reason or is mutually agreed to . . . ." *Id.* at 39.

The Complaint nowhere alleges, nor does either party argue, that Plaintiff was terminated for cause. Therefore, as a threshold matter, the Court must determine whether the Complaint plausibly alleges either that Plaintiff resigned due to "Good Reason," or that his resignation was

6

"mutually agreed to" by the parties. As set forth below, because the Court concludes that Plaintiff fails to allege facts satisfying either condition, he is a "Bad Leaver" under the Purchase Agreement, and thus the Complaint does not state a claim for which relief can be granted.[2]

### A. The Complaint Fails to Allege Plaintiff's Resignation was Due to "Good Reason"

Even assuming that Plaintiff did experience a "Reduction" in his "duties, level of authority or responsibility," *id*. at 44–45, as set forth in his January 26, 2018 email to Walker, his Complaint cannot adequately plead that he resigned "due to Good Reason" for a simple—but fatal—reason: the effective date of his departure from the company came ten days too late.

The Agreement expressly states that, in order to be for "Good Reason," a resignation must be "effective *no later* than 30 days after the expiration of the 30-day cure period." Purchase Agmt. at 44–45 (emphasis added). After providing "written notice" of the "existence of the Good Reason condition," Plaintiff triggered a "30 day period" during which EPT was given the opportunity to "remedy the Good Reason condition." *Id*. at 45. Plaintiff was to "resign based on the Good Reason condition specified in the notice effective no later than 30 days following the expiration of the 30-day cure period." *Id*. Put differently: Plaintiff was required to resign effective no later than 60 days after the date of the notice for Good Reason. Because his email to Walker was sent January 26, 2018, he had until March 27, 2018—and no later—for his resignation to become effective. Any resignation that became effective thereafter cannot have been for "Good Reason."

The Complaint here plainly alleges that, "[o]n January 26, 2018, by an email to Walker, Cook provided notice to EaglePicher that there had been a material reduction to his duties and

---

[2] The Employment Agreement contains a definition of "Good Reason" identical to the one used in the Purchase Agreement. *See* Employment Agmt. § 1(s). Section 5 of the Employment Agreement then includes a condition precedent for entitlement to benefits which provides that EPT must pay specified benefits "if the Employee resigns from employment for Good Reason." *Id*. § 5(b); *see also Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) (observing that the word "if" is a "linguistic convention[]" of a condition precedent.). Thus, the claim for breach of the Employment Agreement may be treated jointly with the claim for breach of the Purchase Agreement.

level of authority or responsibility." Compl. ¶ 22. It then alleges that "[a]s EaglePicher did not cure the reduction . . . [Plaintiff] provided his notice of resignation on March 6, 2018, effective 31 days later on April 6, 2018." *Id*. ¶ 24. While Plaintiff admits that "the effective date of his resignation was a mere ten days outside of the thirty-day window provided," he argues that the Court should not "only read the four corners of the Purchase Agreement" or "strictly construe it against [him]." Opp. at 13. But literal observance of conditions precedent is strictly enforced under New York Law, and "there is no mitigating standard of materiality or substantiality applicable" to the non-satisfaction of a condition precedent. *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 692 (1995); *see also Karmilowicz*, 2011 WL 2936013, at *10 (strictly construing a condition precedent and granting motion to dismiss where plaintiff failed to satisfy its literal terms).

Accordingly, because Plaintiff's resignation became effective on April 6, 2018, a date outside the 60-day period required, it cannot be for "Good Reason."

**B. The Complaint Fails to Allege Plaintiff's Resignation was Mutually Agreed Upon**

Although the allegations in the Complaint are premised on a departure for "Good Reason," after EPT filed its motion to dismiss (clarifying that the effective date of Plaintiff's resignation clearly fell outside the required 60-day window), Plaintiff now claims that, in any event, he is not a "Bad Leaver" because his resignation was "mutually agreed to by [Cook] and [EPT]." Opp. at 12. This argument, too, is unavailing.

Plaintiff argues that he did not actually "resign" under the Purchase Agreement when he sent the email on March 6, 2018; rather, he claims that he and EPT "mutually agreed to [his] resignation on March 6, 2018 and March 16, 2018," when he and Walker "discussed and agreed to the resignation, effective April 6, 2018." *Id*. As support, he defines "resign" as "to give up

8

one's office or position," *id*. at 11 n.7, such that he did not "resign" until April 6, 2018—a date that EPT "accepted" in its March 16 letter.  Plaintiff continued to press this argument in a supplemental letter filed with the Court following oral argument on the present motion.  *See* Dkt. 35 at 1 (arguing that "to resign requires two components, one must both express an intent to resign, *and* undertake some conduct to actually relinquish the position") (emphasis in original); *see also id*. at 3–5 (citing out-of-Circuit authority interpreting "resign" in unrelated contexts, including the conferral of state unemployment benefits in Kansas, West Virginia, Oregon, Pennsylvania, and Colorado).

While facially appealing on an initial read, however, Plaintiff's definition of "resign" is not supported by the Purchase Agreement, because it would "render[] meaningless" other terms in the contract.  *Helmsley-Spear, Inc. v. New York Blood Ctr., Inc*., 257 A.D.2d 64, 69 (1st Dep't 1999). Specifically, were Plaintiff's reading of "resign" to be credited—meaning the day an employee is last on the payroll—it would render the Agreement's repeated use of "effective" entirely without force.  To take one example, the Agreement provides:

> If the Good Reason condition is not remedied within such 30 day period, such Person may *resign* based on the Good Reason condition specified in the notice *effective* no later than 30 days following the expiration of the 30-day cure period.

Purchase Agmt. at 45 (emphasis added).  If the date one "resigns" meant the same thing as the "effective" date employment ends, in other words, the Agreement's contemplation of a 30-day timeframe would have no import whatsoever.  This cannot be, and courts are to "construe a contract so as to give meaning to all of its language and avoid an interpretation that effectively renders meaningless a part of the contract." *Helmsley-Spear*, 257 A.D.2d at 69.

Rather, the proper definition of resign, both as a legal term of art, and under the meaning of the Agreement here, is quite clear—"to formally announce one's decision to leave a job or an

organization." *Resign*, Black's Law Dictionary (11th ed. 2019).  This definition makes sense within the context of the 30-day period discussed in defining "Good Reason," and thus complies with the rule that "words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby." *William C. Atwater & Co. v. Panama R. Co.*, 246 N.Y. 519, 524 (1927).[3]

Thus understood, EPT and Plaintiff did not "mutually agree to" his decision to resign when he unilaterally sent the email doing so on March 6, 2018.  Rather, at most, they only later came to an agreement about the effective date of that unilateral resignation decision when EPT wrote Plaintiff back on March 16, 2018.  To be sure, that letter involved inartful phrasing, noting that EPT "acknowledges receipt" of the March 6, 2018 letter, "and accepts [Cook's] resignation as of April 6, 2018 (the '<u>Resignation Date</u>')."  Cohen Decl., Ex. 5 at 1 (emphasis in original).  But EPT's use of "resignation" in the March 16 letter did not modify the Purchase Agreement, nor that contract's use of the word "resign."  Indeed, in the letter, as EPT emphasized at oral argument, the company emphatically stated that it was *not* in agreement that Plaintiff's departure was for "Good Reason"—hardly the language of a party that was "mutually agree[ing] to" terms of Cook's departure.  *Id*. ("In your letter you characterized your resignation as for Good Reason.  We strongly disagree with that characterization and are treating your resignation as without Good Reason.").

Moreover, as to Plaintiff's suggestion that the Purchase Agreement was "oral[ly] modified," *see* Opp. at 13–14, such that he and EPT somehow *later* reached mutual agreement about his resignation, the Court is unpersuaded.  The Purchase Agreement explicitly states that it

---

[3] Plaintiff's related argument that he had not "resigned" by the time the 2018 Acceleration Payment was allegedly due on March 28, 2018, and thus not (yet) a "Bad Leaver," *see* Opp. at 11–12, fails for the same reason.  The Agreement decouples the act of "resigning" from an employee's final day with the company, such that Plaintiff "resigned" in his formal announcement as such on March 6, 2018.  Indeed, as EPT observed in its supplemental letter, *see* Dkt. 36 at 2, in his March 6, 2018 email, Cook himself evinced clear agreement with the definition of "resign" used by the Court: "I am resigning . . . ."

10

"may be amended or modified . . . only by a duly authorized agreement in a writing signed on behalf of each party." Purchase Agmt. § 7.08(a).[4] Thus—to say nothing of the statute of frauds—under the contract itself there can be no oral modification or waiver. *See Exceed Holdings LLC v. Chicago Bd. Options Exch. Inc.*, 2018 WL 4757691, at *4–5 (S.D.N.Y. Sept. 30, 2018) (rejecting oral modification where contract required modifications to be in writing signed by the parties, and granting a motion to dismiss).

Accordingly, Plaintiff also cannot demonstrate that his resignation was "mutually agreed to" by EPT.

\* \* \*

Because Plaintiff fails to plausibly allege facts supporting either that he resigned with "Good Reason," or that his resignation was "mutually agreed to," he has not pleaded facts supporting a finding under the contract that he was not a "Bad Leaver." He thus fails to satisfy the condition precedent under the Purchase Agreement, and is not entitled to the relief he seeks as a matter of law. *See Oppenheimer & Co.*, 86 N.Y.2d 685, 692 (1995).[5]

## II.     The California Wage Claim is Time-Barred

Plaintiff also brings a claim under Section 202(a) of the California Labor Code, alleging that EPT failed to pay him outstanding wages within 72 hours of the end of his employment with the company. That statute, however, is subject to a three-year statute of limitations. *See, e.g., Pineda v. Bank of Am., N.A.*, 241 P.3d 870, 876 (Cal. 2010) (A "three-year limitations period govern[s] all actions for section 203 penalties."). Thus, any claim for wages owed from April

---

[4] The Employment Agreement similarly renders null any modification "except by an instrument in writing signed by the Employee and a duly authorized officer of Company that expressly identifies the amended provision of this Agreement." Employment Agmt. § 17.

[5] Because the Court finds that, based on the facts alleged in the Complaint, Plaintiff is a "Bad Leaver" and thus unable to satisfy the condition precedent, it need not address Defendants' arguments in the alternative that the Complaint fails to plausibly allege a "Diminution."

2018 must have been filed no later than April 2021. Plaintiff's Complaint was filed in March 2022, nearly a year after the expiration of the limitations period, and is therefore time-barred.

### III. Leave to Amend

In the alternative, Plaintiff seeks leave to file an amended complaint. Whether to grant or deny leave is committed to the "sound discretion of the district court," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), although "the usual practice" in this Circuit is "to grant leave to amend the complaint" when a motion to dismiss is first granted. *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). Leave to amend should be denied generally only where there is "undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party." *McCarthy*, 482 F.3d at 200.

Here, the Court finds that amendment would not result in prejudice to the parties, nor has there been undue delay or bad faith. Frankly, the Court is skeptical that Plaintiff will be able to overcome its finding regarding his failure to satisfy the condition precedent for entitlement to the 2018 Acceleration Payment under the terms of the Purchase Agreement. To the extent that he claims he had a separate meeting to reach an oral agreement about his resignation, for instance, *see* Opp. at 14, it is unlikely that such allegations would make a difference under the terms of the Purchase Agreement, which states that it "may be amended or modified . . . only by a duly authorized agreement in a writing signed on behalf of each party." Purchase Agmt. § 7.08(a).

Nevertheless, amendment is not so clearly futile such that there is no manner in which Plaintiff can "address the deficiencies identified by the court." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009). Accordingly, Plaintiff is granted leave to amend, provided he has a good faith basis for doing so.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted without prejudice. Plaintiff may file an amended complaint within thirty days, provided he has a good faith basis. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 16.

SO ORDERED.

Dated: March 14, 2023
New York, New York

_____
Hon. Ronnie Abrams
United States District Judge