UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

CHRISTOPHER COOK,

        Plaintiff,

   -v-                               No.   1:22-cv-01893-LTS

EAGLEPICHER TECHNOLOGIES, LLC,
and DOES 1-10,

        Defendants.

--------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

        Plaintiff Christopher Cook ("Plaintiff" or "Mr. Cook") brings this action against EaglePicher Technologies, LLC ("EPT") and Does 1-10 (together, "Defendants"), for two counts of breach of contract and one count of unfair business practices under California law.  (Docket entry no. 38 ("First Amended Complaint" or "FAC").)  Before the Court is EPT's motion to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (Docket entry no. 41 (the "Motion").) The Court has jurisdiction of the dispute pursuant to 28 U.S.C. section 1332.

        The Court has reviewed carefully the submissions in connection with the instant motion.  For the following reasons, EPT's motion to dismiss the First Amended Complaint is granted in its entirety.

<u>BACKGROUND</u>

<u>Factual Background</u>

        The following facts, drawn from the First Amended Complaint, are taken as true for the purposes of the instant motion practice.  The Court also considers email communications

(docket entry no. 38-3) that are "attached to the complaint as exhibits" as well as the Purchase Agreement (docket entry no. 18-1) and Employment Agreement (docket entry no. 18-2) because they are "incorporated by reference in the complaint." DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010).

The Underlying Contract

After founding LithiumStart, a successful startup that developed lithium-ion energy solutions, Mr. Cook sold his business to EPT in February 2017. (FAC ¶¶ 9, 11.) The parties codified the terms of the acquisition in a Purchase Agreement; Mr. Cook also entered into an Employment Agreement with EPT because he remained active in the operation of LithiumStart after the sale. (Id. ¶¶ 11-12.) Mr. Cook received cash consideration at the time of the purchase and was "entitled to further earn-out payments" upon the completion of milestones under the Purchase Agreement. (Id. ¶ 13.)

Under Section 1.05(d)(i) of the Purchase Agreement, EPT would owe Mr. Cook a "2018 Acceleration Payment" if one of two sets of conditions were satisfied prior to the end of 2018: "(A)(1) there is an EPT Liquidity Event and (2) a Diminution, or (B) a Termination Without Cause." (Purchase Agreement § 1.05(d)(i).) However, Section 1.05(c) provides that Plaintiff must satisfy an express "condition precedent to . . . receiving any payment pursuant to . . . Section 1.05." (Id. § 1.05(c).) Namely, he "shall not be a Bad Leaver." (Id.) If Plaintiff is a "Bad Leaver"—regardless of any other condition being satisfied—he "shall forfeit his right to, and therefore shall not be entitled to receive any" earn-out payment. (Id.) In sum: for entitlement to an accelerated payment if his employment was not terminated without cause, Plaintiff must: (1) not be a "Bad Leaver" (id. § 1.05(c)); (2) demonstrate that there was an "EPT

Liquidity Event" (id. § 1.05(d)(i)(A)(1)); and (3) demonstrate there was a "Diminution" (id. § 1.05(d)(i)(A)(2)).

The Purchase Agreement defines a "Bad Leaver" as an employee who (1) was terminated for cause, or (2) "voluntarily resigned . . . except . . . where such resignation is due to Good Reason or is mutually agreed to" by the employee and EPT.  (Purchase Agreement at 39.) "In order for an employee to resign with Good Reason," (i) there must have been a "Reduction," defined as a "change" that "materially reduces" the employee's "duties, level of authority or responsibility[,]" (ii) the employee "must provide written notice to [EPT] . . . within 60 days of the initial existence of [the] Good Reason condition[,]" and (iii) the employee's resignation must be "effective no later than 30 days after the expiration of [EPT's] 30-day cure period."  (Id. at 44-45.)

Under Section 5(b) of the Employment Agreement, Mr. Cook is entitled to nine months of his "Annual Base Salary in accordance with [EPT's] customary payroll practices" ("Severance Pay"), health care coverage for nine months ("Health Care Coverage"), and "any accrued but unpaid Annual Bonus" from the prior calendar year ("Annual Bonus") "if" he was terminated without cause or resigned for "Good Reason."  (Employment Agreement § 5(b).)  The Employment Agreement includes a definition of "Good Reason" identical to the one used in the Purchase Agreement.  (See id. § 1(s).)

The Underlying Conduct

The First Amended Complaint alleges that, as "part of a pattern of misconduct [and] lack of good faith," EPT "would drag its feet for months before making the required payment under the Purchase Agreement."  (FAC ¶¶ 14-15.)  Indeed, Mr. Cook alleges that "[m]any key promises made in earlier discussions and planning documents including, but not

limited to, preserving LithiumStart's autonomy, and investment and growth of the division, were left unfulfilled, and, consequently, LithiumStart's ability to execute was diminished." (Id. ¶ 15.) For instance, "[n]early a year after the acquisition, LithiumStart was still only partially integrated" into EPT, and EPT "refus[ed] to formalize revenue counting methods, or provide a current account of progress, necessary . . . to determine whether [Mr. Cook] would be entitled to a revenue earn out under Section 1.05(b)(1) of the Purchase Agreement." (Id. ¶¶ 20-21.)

On January 26, 2018, Mr. Cook sent an email to Gordon Walker, the CEO of EPT, to provide notice "that there had been a material reduction to his duties and level of authority or responsibility under the Purchase Agreement." (FAC ¶ 23.) The First Amended Complaint alleges that the "Reductions" highlighted in that email provided Mr. Cook with "a 'Good Reason' to resign from his position should [EPT] not cure the reductions within 30 days of notice." (Id. ¶ 24.) EPT did not cure those "material reductions" by February 25, 2018, the close of the 30-day cure period under the Purchase Agreement. (Id. ¶ 25.)

On March 6, 2018, Mr. Cook informed Mr. Walker of his intent to resign during an in-person conversation. (FAC ¶ 26.) During that conversation, the First Amended Complaint alleges, Mr. Walker was "shocked" that Mr. Cook was resigning and "requested that Cook provide some time to transition so that Cook could complete his work on certain specified programs." (Id. ¶ 27.) The First Amended Complaint alleges that, "[a]fter some discussion, Cook and EaglePicher (through Walker) came to a mutual agreement that Cook would provide the additional time requested by EaglePicher, and make April 6, 2018 his last date of employment." (Id.) Following that conversation, Mr. Cook "immediately went back to his desk and sent an e-mail to Walker" and "attached a resignation letter that he believed reflected the parties' agreement" and "specifically noted that Cook was resigning for 'Good Reason' under

the parties' agreements."  (Id. ¶ 29.)  That email also noted that Mr. Cook's resignation would be effective on April 6, 2018.  (See id. ¶¶ 28-29, 37.)

Two days after Mr. Cook discussed his resignation with Mr. Walker in-person and via email, on March 8, 2018, another entity, GTCR LLC, acquired EPT.  (FAC ¶ 32.)  Four days after that, on March 12, 2018, EPT's Legal Director wrote an email indicating that new, limited Delegations of Authority pursuant to GTCR's acquisition of EPT would also apply to LithiumStart and Mr. Cook.  (Id. ¶ 33.)  On March 14, 2018, Mr. Cook provided written notice to EPT that he was entitled to the 2018 Acceleration Payment (id. ¶ 35) and, on March 16, 2018, EPT sent an email accepting Plaintiff's resignation, effective April 6, 2018 (id. ¶ 37).  In that same March 16, 2018, email, EPT disputed that Mr. Cook's resignation was with "Good Reason."  (Id.; see also docket entry no. 38-3.)  Mr. Cook's employment with EPT ended April 6, 2018; he was not paid the 2018 Acceleration Payment described in the Purchase Agreement, and he did not receive Severance Pay, Health Care Coverage, or the Annual Bonus under the Employment Agreement.  (FAC ¶¶ 40-48.)

Procedural History

Mr. Cook initiated this action by filing a Complaint (docket entry no. 1), and EPT filed a motion to dismiss (docket entry no. 16).  The Court dismissed the breach of contract claims in the Complaint and held that, "[b]ecause Plaintiff fails to plausibly allege facts supporting either that he resigned with 'Good Reason,' or that his resignation was 'mutually agreed to,' he has not pleaded facts supporting a finding under the contract that he was not a 'Bad Leaver.'  He thus fails to satisfy the condition precedent under the Purchase Agreement, and is not entitled to the relief he seeks as a matter of law."  (Docket entry no. 37 (the "Opinion") at 11.)  Although Mr. Cook was granted leave to amend "provided that he ha[d] a good faith

basis for doing so[,]" the Court noted that it was "skeptical that Plaintiff will be able to overcome its finding regarding his failure to satisfy the condition precedent for entitlement to the 2018 Acceleration Payment under the terms of the Purchase Agreement" because, "[t]o the extent that he claims he had a separate meeting to reach an oral agreement about his resignation, for instance . . . it is unlikely that such allegations would make a difference under the terms of the Purchase Agreement. . . .'" (Opinion at 12.)[1]

Mr. Cook subsequently filed the First Amended Complaint. The First Amended Complaint differs from the Complaint in two material respects. First, the First Amended Complaint alleges facts related to Mr. Cook's March 6, 2018, discussion with Mr. Walker regarding his resignation from EPT that were not included in the original Complaint. (See FAC ¶¶ 26-29.) Second, the First Amended Complaint brings one new count for unfair business practices under California Business and Professions Code §§ 17200 et seq. (FAC ¶¶ 61-71.) EPT now moves to dismiss the First Amended Complaint, arguing that the second pleading fails for substantially the same reasons as the original Complaint.

DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). A complaint cannot simply recite legal conclusions or bare elements of a cause of action; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Under the Rule 12(b)(6) standard, the court accepts as true the non-conclusory factual

---

[1]      The Court also dismissed the California wage claim pled in the original Complaint because the statute of limitations had expired. (Opinion at 11-12.)

allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).  In deciding a motion to dismiss, the Court may consider "documents attached to the complaint" and "incorporated by reference in the complaint."  DiFolco, 622 F.3d at 111.

EPT's Compliance with Page Limitations

"As an initial matter," Mr. Cook argues that EPT's Memorandum in Support of its Motion to Dismiss "should be stricken" because it exceeds the page limitations for a memorandum of law filed in support of a motion to dismiss.[2]  (Docket entry no. 43 ("Pl. Mem.") at 22.)  Specifically, Mr. Cook argues that, while EPT's memorandum (docket entry no. 42 ("Def. Mem.")) is just ten pages, it exceeds the limit of twenty-five pages because it incorporates by reference the arguments EPT made in previously filed memoranda.  (Pl. Mem. at 22-23.) While Mr. Cook identifies examples of courts in this Circuit declining to consider arguments incorporated by reference[3] because "[s]uch a practice violates the Local Rule on page limitations[,]" Topliff v. Wal–Mart Stores East LP, No. 6:04–CV–0297-GHL, 2007 WL 911891, at *9 n. 65 (N.D.N.Y. Mar. 22, 2007), Mr. Cook does not identify, nor is the Court aware of, any court striking a memorandum entirely on that ground; the Court also finds no circumstances

---

[2]   While Mr. Cook cites Judge Abrams' Standing Order, the Individual Practices of the undersigned also provide that, "[u]nless prior permission has been granted, memoranda of law in support of and in opposition to motions are limited to 25 pages. . . ."  Individual Practices ¶ 2.h.

[3]   In any event, the Court has not relied on arguments that the parties raised in the prior motion to dismiss motion practice that were not also raised in the briefing on the instant Motion.

warranting the use of its discretion to do so here.  The Court, therefore, denies the request to strike EPT's memorandum in support of the motion to dismiss.

Breach of Contract (Counts One and Two)

Mr. Cook argues that Defendants are in breach of (i) the Purchase Agreement because they failed to pay him the 2018 Acceleration Payment (FAC ¶¶ 49-54), and (ii) the Employment Agreement because EPT failed to provide him with Severance Pay, Health Care Coverage, and the Annual Bonus (id. ¶¶ 55-60).  In its evaluation of a motion to dismiss a breach of contract claim, the Court shall give all "words and phrases" their "plain meaning," construe the contract to give "full meaning and effect to all of its provisions," and resolve any contractual ambiguities in the plaintiff's favor.  See Cisco Sys., Inc. v. Synamedia Ltd., 557 F. Supp. 3d 464, 472 (S.D.N.Y. 2021) (internal quotation marks and citations omitted); see also Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie, 784 F.3d 78, 86 (2d Cir. 2015).  Under New York law, "[c]onditions precedent must be literally observed when a contract's language unmistakably expresses them."  Karmilowicz v. Hartford Fin. Servs. Grp., No. 11-CV-539-CM-DCF, 2011 WL 2936013, at *10 (S.D.N.Y. July 14, 2011), aff'd, 494 F. App'x 153 (2d Cir. 2012); see also Baraliu v. Vinya Cap., L.P., No. 07-CV-4626-MHD, 2009 WL 959578, at *5 (S.D.N.Y. Mar. 31, 2009).

Purchase Agreement (Count One)

To be owed the 2018 Acceleration Payment under the Purchase Agreement, Mr. Cook must satisfy the relevant condition precedent—that is, he must plausibly allege that he was not a "Bad Leaver."  The Purchase Agreement provides:

> Notwithstanding anything herein or otherwise to the contrary, as a condition precedent to any Person receiving any payment pursuant to this Section 1.05 (whether an earn-out payment, bonus payment, or otherwise), if, as and when due in accordance with this Section 1.05 (as applicable, an "Earn-Out Payment", and

such Person, a "Earn-Out Recipient"), such Earn-Out Recipient shall not be a Bad Leaver. In the event that any Earn-Out Recipient is a Bad Leaver, then such Earn-Out Recipient shall forfeit his right to, and thereafter shall not be entitled or eligible to receive, any amount that has not been paid or earned, in respect of any Earn-Out Payment, to such Earn-Out Recipient as of the date such Earn-Out Recipient becomes a Bad Leaver.

Purchase Agreement § 1.05(c). The Purchase Agreement defines a "Bad Leaver" as an employee who either (1) was terminated for cause, or (2) "voluntarily resigned . . . except . . . where such resignation is due to Good Reason or is mutually agreed to" by the employee and EPT. (Purchase Agreement at 39.) There is no argument that Mr. Cook was terminated for cause.

For substantially the same reasons that the Court explained in its prior Opinion, Mr. Cook has failed to "adequately plead that he resigned 'due to Good Reason' for a simple— but fatal—reason: the effective date of his departure from the company came ten days too late." (Opinion at 7.) [4] As the Court explained:

> The Agreement expressly states that, in order to be for "Good Reason," a resignation must be "*effective no later* than 30 days after the expiration of the 30-day cure period." After providing "written notice" of the "existence of the Good Reason condition," Plaintiff triggered a "30 day period" during which EPT was given the opportunity to "remedy the Good Reason condition." Plaintiff was to "resign based on the Good Reason condition specified in the notice effective no later than 30 days following the expiration of the 30-day cure period." Put differently: Plaintiff was required to resign effective no later than 60 days after the date of the notice for Good Reason. Because his email to Walker was sent January 26, 2018, he had until March 27, 2018—and no later—for his resignation

---

[4]    To avoid this inevitable result, Mr. Cook argues that, because "Merriam-Webster defines 'resign' as 'to give up one's office or position'" and because Mr. "Cook did not give up his office or position at EPT until April 6, 2018[,]" Mr. Cook had not resigned "at the time the 2018 Acceleration Payment was due on March 28, 2018." (Pl. Mem. at 12 & n.2.) The Court, however, already concluded that this definition of "'resign' is not supported by the Purchase Agreement because it would 'render[] meaningless' other terms in the contract." (Opinion at 9 (citation omitted).) "Specifically, were Plaintiff's reading of 'resign' to be credited—meaning the day an employee is last on the payroll—it would render the Agreement's repeated use of 'effective' entirely without force." (Id.)

> to become effective. Any resignation that became effective thereafter cannot have been for "Good Reason."

(Id. at 7 (citations omitted).)  Because Mr. Cook's effective date of resignation—April 6, 2018—was ten days outside of the thirty-day window provided, Mr. Cook did not leave for "Good Reason" under the terms of the Employment Agreement.  See Karmilowicz, 2011 WL 2936013, at *10 (strictly construing a condition precedent and granting motion to dismiss where plaintiff failed to satisfy its literal terms).[5]

Because Mr. Cook did not leave for "Good Reason" under the terms of the Purchase Agreement, Mr. Cook must adequately allege that his resignation was "mutually agreed upon" in order to plead compliance with the condition precedent.  Mr. Cook argues that "the First Amended Complaint sufficiently alleges that Cook and EPT came to a mutual agreement regarding Cook's resignation."  (Pl. Mem. at 12.)  To support this argument, Mr. Cook points to four factual allegations in the First Amended Complaint: (1) that Mr. Cook informed Mr. Walker, EPT's CEO, that he intended to resign, effective immediately, on March 6, 2018; (2) that Mr. Walker was shocked to hear of Mr. Cook's intent to resign and immediately engaged in negotiations with Mr. Cook regarding the resignation; (3) that Mr. Cook and EPT came to a mutual agreement regarding Mr. Cook's resignation; and (4) that EPT requested that Mr. Cook continue working until April 6, 2018, to ease the transition after his departure.  (Id. at 13.)  This

---

[5]     Mr. Cook also argues—without citation to legal authority—that "EPT should be estopped from alleging that Cook did not resign for Good Reason as it was its own unreasonable demand that Cook remain employed until April 6, 2018 to aid in the transition."  (Pl. Mem. at 17.)  While it is true that "[a] party cannot insist upon a condition precedent . . . when its non-performance has been cause[d] by himself[,]" Sidella Export–Import Corp. v. Rosen, 273 App. Div. 490, 492, 78 N.Y.S.2d 155 (N.Y. App. Div. 1st Dept. 1948), the facts alleged in the First Amended Complaint do not support Mr. Cook's argument.  That is, the First Amended Complaint alleges a "mutual agreement" (FAC ¶ 27)—not an "unreasonable demand" (Pl. Mem. at 17).

argument appears to assume that Mr. Cook and EPT "mutually agreed" to his resignation—sufficient to satisfy the condition precedent in the Purchase Agreement—because Mr. Cook and Mr. Walker reached a mutual agreement "at least as to the date of the resignation" during their March 6, 2018, discussion.  (Id. at 15.)

      In deciding a motion to dismiss, while the Court must accept all well-pled factual allegations as true, allegations that are "conclusory" are "not entitled to be assumed true."  Iqbal, 556 U.S. at 681.  Nor can the Court accept as true "factual assertions that are contradicted by the complaint itself" or "by documents upon which the pleadings rely. . . ."  Perry v. NYSARC, Inc., 424 F. App'x 23, 25 (2d Cir. 2011).  While the First Amended Complaint sufficiently alleges that Mr. Cook and Mr. Walker "mutually agreed" to the effective date of his resignation, that is not enough to satisfy the condition precedent in the Purchase Agreement.

      Instead, a plain reading of the Purchase Agreement makes clear that a mutual agreement regarding the effective date of Mr. Cook's resignation is not sufficient to show that the "resignation" was "mutually agreed to by" Mr. Cook and EPT to satisfy the condition precedent.  (Purchase Agreement at 39.)  As the prior Opinion explained, "the proper definition of resign, both as a legal term of art, and under the meaning of the Agreement here, is quite clear—'to formally announce one's decision to leave a job or an organization.'"  (Opinion at 9-10 (quoting Resign, Black's Law Dictionary (11th ed. 2019).)  Indeed, a reading of the Purchase Agreement that gives "resignation" the meaning that Mr. Cook seems to rely on—the last day of his term of employment at EPT (see Pl. Mem. at 12 & n.2)—would "render the Agreement's repeated use of 'effective' entirely without force."  (Opinion at 9.)  Under the proper definition of "resign," the First Amended Complaint pleads several facts indicating that Mr. Cook's resignation was not, in fact, mutual.  (See FAC ¶¶ 27 (alleging that Mr. Walker was "shocked"

upon hearing of Mr. Cook's intent to resign); 37 (describing email in which EPTC "contested

that Cook was resigning for Good Reason").)  These alleged facts are inconsistent with Mr.

Cook's argument that he has sufficiently pled mutual agreement under the Purchase Agreement.

In sum, the First Amended Complaint does not plausibly allege a mutually agreed

upon resignation; instead, the pleading describes Mr. Cook's unilateral announcement of his

resignation followed by negotiations regarding his last day of work at EPT.  Accordingly, Mr.

Cook cannot demonstrate that his resignation was "mutually agreed to" by EPT.  Because Mr.

Cook fails to allege facts plausibly supporting a conclusion either that he resigned with "Good

Reason," or that his resignation was "mutually agreed to," he has not pleaded facts supporting a

conclusion that he was not a "Bad Leaver" within the meaning of the Purchase Agreement.  As a

matter of law, Mr. Cook is not entitled to the relief he seeks because he failed to satisfy the

condition precedent under the Purchase Agreement.

Employment Agreement (Count Two)

The Employment Agreement provides that EPT must pay Mr. Cook specified

benefits "if the Employee resigns from employment for Good Reason."  (Employment

Agreement § 5(b).)  It is well-established that "if" is a "linguistic convention[]" of a condition

precedent in a contract.  Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc., 821

F.3d 297, 305 (2d Cir. 2016).  Therefore, to be owed Severance Pay, Health Care Coverage, and

Annual Bonus under the Employment Agreement, Mr. Cook must satisfy the condition precedent

that he was terminated without cause or resigned for "Good Reason."  Because there is no

allegation that he was terminated without cause, Mr. Cook must show that he resigned for "Good

Reason."  "In order for a Person to resign with Good Reason" under the Employment

Agreement, (i) there must have been a "Reduction," defined as a "change" that "materially

reduces" the employee's "duties, level of authority or responsibility[,]" (ii) the employee "must provide [EPT] with written notice . . . within 60 days of the initial existence of" the reduction, and (iii) the employee's resignation must be "effective no later than 30 days after the expiration of [EPT's] 30-day cure period."  (See Employment Agreement § 1(s).)

Because "Good Reason" is defined in the same way in both agreements (Purchase Agreement at 44-45; see also Employment Agreement § 1(s)), Mr. Cook failed to plead that his resignation was for "Good Reason" under the Employment Agreement for the same reason he failed to allege that his resignation was for "Good Reason" under the Purchase Agreement.  In other words, Mr. Cook did not satisfy the condition precedent to his entitlement to Severance Pay, Health Care Coverage, and the Annual Bonus under the Employment Contract.  His breach of contract claim under the Employment Agreement, therefore, also fails as a matter of law.

Unfair Business Practices (Count Three)

The First Amended Complaint notes that "California Business and Professions Code §§ 17200 et seq. . . . prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices[,]" including an employer's failure to "pay [an] employee any outstanding wages owed to them within 72 hours" of that employee's resignation under California Labor Code § 202(a).  (FAC ¶¶ 62, 65.)  The FAC further alleges that he is "entitled to his 2018 acceleration payment, nine months of severance wages, and his 2017 annual bonus" under California law.  (Id. ¶ 63.)  However, the Court has already concluded that Mr. Cook has failed to adequately plead facts showing that he is entitled to those payments under the Purchase

Agreement and the Employment Agreement.  Therefore, his claim to that payment for unfair business practices under California law must also be dismissed.

<u>CONCLUSION</u>

For the foregoing reasons, EPT's motion to dismiss the First Amended Complaint is granted in its entirety.  This Memorandum Opinion and Order resolves docket entry no. 41. The Clerk of Court is respectfully directed to enter judgment dismissing the First Amended Complaint with prejudice and close the above-captioned case.

SO ORDERED.

Dated: New York, New York
      January 31, 2024

/s/ Laura Taylor Swain_____
LAURA TAYLOR SWAIN
Chief United States District Judge